# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Daniel S. King, | Case No. 2:19-cv-01129-JAD-BNW |
| Plaintiff, | |
| v. | **Report & Recommendation** |
| City of Henderson, | |
| Defendant. | |

Defendant City of Henderson ("the City") moves to dismiss plaintiff Daniel S. King's complaint under Rule 12(b)(6)[1]. ECF No. 9. The City has three primary arguments. First, that King failed to exhaust his administrative remedies for his discrimination claims as required by Title VII. Second, that King failed to exhaust his administrative remedies for his discrimination claims as required by Chapter 288 of the Nevada Revised Statutes. And third, that King failed to state a claim upon which relief may be granted under Title VII's anti-retaliation provision. The Court recommends that the district judge reject the City's first argument because the City failed to properly raise it in its motion and instead raised it for the first time in reply. The Court recommends that the district judge rejects the City's second argument because the City failed to establish why Chapter 288's exhaustion requirement applies to King's claim, which was brought under Chapter 613. However, the Court will recommend that King's retaliation claim be dismissed without prejudice because that claim is not yet plausible on its face.

Concurrent with his response to the City's motion, King filed a motion to amend his complaint. ECF No. 18. The Court finds that King's proposed amendment is subject to

---

[1] This motion was referred to the undersigned magistrate judge for a proposed recommendation to the district judge, in accordance with 28 U.S.C. § 636(b)(1)(B).

dismissal. Therefore, the Court will recommend to the district judge that King's motion to amend be denied without prejudice.

## I. Background.[2]

### A. Factual allegations

#### 1. *Meetings and discord.*

King is a police officer for the City. ECF No. 1 at 3. Throughout his 20-year career, King has earned high job performance ratings and established himself as an authority on use of force by law enforcement. *Id.* King sits on a national board for the investigation of police shootings and he alleges that he is regarded as the person most knowledgeable in the agency regarding use-of-force investigations. *Id.* at 7. King describes himself as a light-skinned, mixed-race, black male. *Id.* at 3.

In November 2017, the City hired LaTesha Watson as Chief of Police. *Id.* King describes Watson as a dark-skinned, black woman.[3] *Id.*

King attended a meeting with several other employees in March 2018. *Id.* at 4. During the meeting, Watson allegedly directed "condescension," "judgment," and "minimization" at King. *Id.* King claims he was the sole person subject to this animus from Watson. *Id.* King was accompanied to the meeting by his supervisor and a co-worker, both Caucasian males. *Id.* Both employees allegedly told King that they noticed Watson's behavior but did not believe King had done anything wrong or offensive. *Id.* King informed his Lieutenant—who was not present at the meeting—about Watson's behavior. *Id.*

King was deeply affected by his experience at the March 2018 meeting. *Id.* at 3. King alleges that in the 1970s, mixed-race children like himself were uncommon and far less accepted by society than they are today. *Id.* at 4. Black Americans, according to King, discriminate amongst themselves based on the shade of their skin. *Id.*

---

[2] The statements in this background section derive from King's complaint, are for context only, and must not be construed as a finding of fact.

[3] The City fired Ms. Watson in April 2019. ECF No. 1 at 3.

In May 2018, King's Lieutenant was present when Deputy Chief Michael Denning, a Caucasian male, allegedly asked King whether King had "a problem" with Watson. *Id.* at 5. King asked Denning for guidance on how to navigate this apparent issue with Watson. *Id.* Denning was unable to offer any guidance and warned King that Watson was going to confront him about the discord. *Id.*

King next had to contend with what he claims was a false accusation of corruption by Captain David Burns. *Id.* Burns apparently told department supervisors that during use-of-force investigations, King "fixes things" or "whitewashes" cases for police officers. *Id.* Burns's accusation lacked evidentiary support and impugned King's integrity. *Id.*

Some days after this accusation, King notified his Lieutenant that he "would be filing a hostile work environment complaint if these actions continued by Burns." *Id.* King alleges that under City policy, this notice required that King's supervisor notify King's chain of command of King's intent and that some action or investigation take place. *Id.* However, King claims that no such investigation ever came to fruition. *Id.* King requested a meeting with Denning to discuss the purported harassment but that meeting never occurred. *Id.*

A September 2018 meeting also caused friction between King and Denning. After a terse exchange, King and Denning had a "cordial but firm" conversation, though Denning was "visibly enraged." *Id.* at 7.

On the day following the firm exchange with Denning, King learned that he had not been initially invited to attend a meeting regarding investigations of officer-involved shootings. *Id.* King was eventually summoned to the meeting. *Id.*

The following day, King was told that Denning felt King's actions at the meeting were unprofessional, and that King had betrayed and embarrassed Denning. *Id.* Denning confronted King about the investigation meeting and told him: "What you did yesterday was divisive, it tells me you do not know your place, and [you're] no longer part of the team." *Id.* at 8. The phrase "you don't know your place" is a racial epithet when directed at a black person, King alleges. *Id.* Denning then accused King—without evidence—of conducting a biased investigation of an

unspecified case and again warned King that Watson was watching him. *Id.* King's lieutenant and Acting Captain were present for this conversation. *Id.*

### *2. A change in position.*

Denning eventually transferred King to a new "shift" or "assignment." *Id.* at 8, 9. King alleges that the new assignment required different skills and changed King's working conditions, schedule, and pay. *Id.* at 8. Further, King's new duties were less desirable. *Id.*

King further alleges that his transfer to a new assignment violated a collective bargaining agreement between the City and its police officers. *Id.* The agreement apparently requires the City to give police officers a 120-day notice of their reassignment. *Id.* Rather than giving King the required notice, the command instead gave King 120 days of special duty pay. *Id.* King was distraught and took 60 calendar days of personal leave. *Id.* at 9.

### *3. King complains to human resources and the EEOC.*

In October 2018, King filed a detailed hostile work environment complaint with human resources ("HR"). *Id.* Following the complaint, King met with Deputy City Manager Bristol Ellington and others. *Id.* at 11. King alleges that Ellington distorted the facts of his complaint and excluded entire events that gave rise to the hostile environment. *Id.* Ellington found that King failed to proffer evidence showing that Denning and Burns were aware of King's threat to file a hostile work environment complaint. *Id.* Because of this, Ellington upheld the actions of Watson and her command. *Id.*

**B. Procedural history.**

King filed his complaint in June 2019. *Id.* He asserts three claims for relief: (1) violation of Title VII based on color discrimination; (2) violation of Title VII based on retaliation; (3) violation of NRS 613.330 based on race discrimination. ECF No. 1 at 13–14.

The City filed a motion to dismiss in October 2019. ECF No. 9. King filed a timely response and the City filed a timely reply. ECF Nos. 17 and 25.

King also filed a countermotion for leave to file a first amended complaint. ECF No. 18. The City filed a timely response and King filed a timely reply. ECF Nos. 26 and 27.

…

## II. Legal standard.

Rule 8 requires that a complaint contain a "short and plain statement of the claim showing that the complainant is entitled to relief." Fed. R. Civ. P. 8(a). To survive a motion to dismiss under Rule 12(b)(6), the short and plain statement "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotation omitted). The complaint must contain more than "labels and conclusions"; a "formulaic recitation" of a claim's elements; or "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

The Court accepts as true all factual allegations in the complaint and it construes those facts in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555; *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). But the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. "[C]onclusory allegations of law and unwarranted inferences," further, are insufficient to overcome a Rule 12(b)(6) challenge. *Caviness v. Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 811–12 (9th Cir. 2010).

## III. Discussion.

### A. King's first and third claims for relief.

#### 1. *Title VII exhaustion.*

The City argues that King failed to exhaust the available administrative remedies for his first claim under Title VII and his third claim under NRS 613.330. The City took two different approaches to this issue: one in its motion and a second in its reply.

For the first approach, the City argues that the Court should dismiss King's first and third claims because Nevada's Employee Management Relations Board ("EMRB") has exclusive jurisdiction over prohibited labor practices between a local government employee and a local government employer. ECF No. 9 at 7. Because King did not allege that he first resorted to the EMRB, the City argues that King failed to exhaust his administrative remedies. Thus, the City concludes that King's discrimination claims should be dismissed. For this argument, the City's

brief relies entirely on Chapter 288 of the Nevada Revised Statutes ("Chapter 288") and a federal court decision that construes Chapter 288 as it pertains to state-law claims. *See id.* at 7–9.

For its second approach, the City again argues that King was required to allege that he presented a charge of discrimination to the EMRB. ECF No. 25 at 4. But for this second approach the City relies heavily on federal court decisions construing 42 U.S.C. § 2000e-5(c). *Id.* at 5. In essence, for its second approach, the City argues that ***federal law*** requires King to file a charge with the EMRB before filing his charge with the EEOC. *Id.* at 4–8.

The problem for the City, however, is that there was ***no*** mention of § 2000e-5(c) in its motion to dismiss nor any analysis of federal court decisions construing that statute. Instead, the City does not cite to § 2000e-5(c) until its reply to King's response.[4] Thus, the City's motion asks the Court to resolve whether **Chapter 288** imposes an obligation on King to first file a claim with the EMRB, but the City's reply asks the Court to resolve whether **§ 2000e-5(c)** requires King to have filed a claim with the EMRB before filing a charge with the EEOC. The analyses under both approaches are related but failing to raise the latter approach can meaningfully alter the resolution of the former approach. In other words, whether Chapter 288—standing alone—required King to first resort to the EMRB is a different question from whether Chapter 288—in tandem with § 2000e-5(c)—required King to first resort to the EMRB.

Trial courts "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Accordingly, for the purpose of this motion only, the Court will recommend to the district judge that she not consider the City's Title VII exhaustion argument because King was not given an opportunity to respond.[5]

…

---

[4] In its motion, the sole federal authority that the City cited for its exhaustion argument involves neither Title VII claims nor Title VII exhaustion. *Rowe v. Clark Cnty. School Dist.*, No. 2:16-cv-661 JCM (PAL), 2017 WL 1550229, at *1, *4 (D. Nev. 2017).

[5] The Supreme Court clarified last year that Title VII's charge-filing exhaustion requirement "is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cnty. Texas v. Davis*, 139 S. Ct. 1843, 1850–52 (2019). Thus, the exhaustion requirement can be forfeited. *Id.* Therefore, the Court's subject matter jurisdiction over King's Title VII claim does not hinge on whether King exhausted his administrative remedies.

### *2. Exhaustion under Nevada law.*

According to the City, Nevada's Employee Management Relations Board ("EMRB") has exclusive jurisdiction over unfair labor practices like the kind alleged by King in his first and third claims. King's failure to allege that he asserted these claims before the EMRB, the City argues, warrants dismissal because King is required to exhaust his administrative remedies under Chapter 288.

King's response focuses primarily on his assertion that he need not resort to the City's grievance and arbitration procedure before filing his Title VII claim in federal court. *See* ECF No. 17 at 5–6. The City has since abandoned this argument. ECF No. 29.

Chapter 288 "governs relations between local governments and public employees." *City of Henderson v. Kilgore*, 131 P.3d 11, 13 (Nev. 2006). The EMRB "is an administrative board created by NRS Chapter 288." *Id.* Its purpose is "to apply expertise to labor disputes and assist in resolving them before they reach the courts." *Rosequist v. Int'l Ass'n of Firefighters Local 1908*, 49 P.3d 651, 655 (Nev. 2002), *overruled on other grounds by Allstate Ins. Co. v. Thorpe*, 179 P.3d 989, 995 n.22 (Nev. 2007). The EMRB "has exclusive jurisdiction over unfair labor practice issues." *City of Reno v. Reno Police Protective Ass'n*, 59 P.3d 1212, 1217 (Nev. 2002). And it is a prohibited labor practice under Chapter 288 for a local government employer or its representative to willfully "[d]iscriminate because of . . . color[.]" NRS 288.270(1)(f). Thus, if King had brought his claim under Chapter 288, then arguably he was required to present that claim to the EMRB before seeking relief in this Court.

However, King brought his discrimination claim under Chapter 613 of the NRS, not Chapter 288. Like Chapter 288, NRS 613.330 prohibits an "employer" from discriminating "against any person . . . because of his or her . . . race[ or] color." NRS 613.330(1)(a). An "employer" under NRS 613.330 is any "person" who has 15 or more employees for 20 or more calendar weeks, and a "person" includes the state of Nevada and its political subdivisions. NRS 613.310(2), (6). The City, therefore, is an employer under both chapters.

For the City to prevail in its argument, the City must establish that King was required to bring his color discrimination claim before the EMRB, despite the fact that he chose to sue the City under NRS 613.330 rather than NRS 288.270. The City has not done so.

In its motion, the City does not meaningfully grapple with King's choice to sue under Chapter 613. Instead, the City argues that because King's "first and third claims for relief pertain to prohibited labor practices by a local government, the EMRB has exclusive jurisdiction over such claims." ECF No. 9 at 9. However, this argument does not account for the fact that Chapters 288 and 613 seemingly provide two independent bases for King to seek relief. The City is an employer under both statutes, King alleges that the City engaged in an employment practice made unlawful under both statutes, and both statutes have concurrently prohibited this labor practice since 1975.[6] At bottom, the City's argument for recasting King's claim under Chapter 613 as one for relief under Chapter 288 is underdeveloped.

The City's authorities are distinguishable. For example, the City cites *City of Reno v. Reno Police Protective Ass'n*, 59 P.3d 1212 (Nev. 2002), for the proposition that the EMRB has exclusive jurisdiction "over unfair labor practice issues." ECF No. 9 at 8. However, the plaintiff in that case sought relief directly from the EMRB. *Id.* at 1215. Thus, *City of Reno* does not resolve the question before this Court.

The City also relies on *Rosequist v. Int'l Ass'n of Firefighters Local 1908*, 49 P.3d 651 (Nev. 2002), for its assertion that Chapter 288 applies to King's complaint. There, the plaintiff's allegations involved a labor organization's representation of plaintiff during arbitration proceedings. *Id.* at 654. The court concluded that the right to fair representation by a union arises under Chapter 288. *Id.* Therefore, plaintiff's allegations were "within the exclusive jurisdiction of the EMRB." *Id.* The claimant, further, did not have discretion on whether "to file a complaint before the board in the first instance." *Id.* at 655.

---

[6] The language prohibiting discrimination on the basis of race or color has existed in Chapter 288 since 1975 and in Chapter 613—previously Chapter 651—since 1965. A.B. 572, 197.5 Leg. (Nev. 1975); A.B. 404, 1965 Leg. (Nev. 1965)

However, there is no indication that the *Rosequist* plaintiff invoked a different statutory provision available to him. Here, the Nevada legislature saw fit to proscribe the City's alleged conduct under Chapter 288 **and** Chapter 613. Chapter 613 makes no mention of the EMRB and provides a different mechanism for King to exhaust his administrative remedies. *See* NRS 613.420; *Pope v. Motel 6*, 114 P.3d 277, 311 (Nev. 2005). But the City's argument would essentially reroute King's third claim from Chapter 613 to Chapter 288, despite the fact that Nevada law seemingly provides him the option of suing under either.

Under Nevada law, "when separate statutes are potentially conflicting," the Court must "attempt to construe both statutes in a manner to avoid conflict and promote harmony." *Beazer Homes Nevada, Inc. v. Eighth Jud. Dist. Ct. ex rel. Cnty of Clark*, 97 P.3d 1132, 1140 (Nev. 2004). If there is some reason why Chapter 288 precludes King from invoking the procedures that the Nevada legislature made available to him in Chapter 613, the City has not identified it. In fact, although not conclusive, the EMRB itself dismisses claims brought under Chapter 613 because that chapter is beyond its jurisdiction. *Banks v. Clark County Dep't of Aviation*, Case No. A1-045909, Item No. 661 (EMRB Sept. 20, 2007) (dismissing plaintiff's Chapter 613 race-discrimination claim because it was beyond the EMRB's jurisdiction but allowing it to proceed under Chapter 288); *Harrison v. City of North Las Vegas*, Case No. A1-045768, Item No. 558 (EMRB Nov. 14, 2003) (same). Accordingly, the Court will recommend to the district judge that the City's motion to dismiss King's third claim be denied.[7]

### B.  King's retaliation claim.

To establish a prima facie case of retaliation, plaintiff must show that: (1) he undertook a protected activity under Title VII; (2) his employer subjected him to an adverse employment action; and (3) there is a causal link between those two events. *Reynaga v. Roseburg Forest*

---

[7] The City's motion applies its Chapter 288 exhaustion argument to King's Title VII claim. However, the City has not, at this juncture, established how state law can give a state agency exclusive jurisdiction over a federal claim like Title VII. Although Title VII requires plaintiffs to resort to state law in certain contexts, this requirement derives from federal statute, not state law. *See* 42 U.S.C § 2000e-5(c).

*Prods.*, 847 F.3d 678, 693 (9th Cir. 2017). For the purpose of this motion, the City concedes that King's reassignment constitutes an adverse employment action. ECF No. 9 at 10.

For the first element, it is a "protected activity" to oppose an employment practice that plaintiff reasonably believes is unlawful under Title VII. *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997); *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994). It follows, then, that the opposed employment practice need "not . . . actually be unlawful." *Moyo*, 40 F.3d at 984.

Turning to the third element, the plaintiff must allege sufficient facts to show a "but-for" causal link between the protected activity and the adverse employment action. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Thus, plaintiff must show that the individuals who allegedly effected the retaliation were "aware that the plaintiff [] engaged in protected activity." *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).

The City's argument turns on four key events alleged in King's complaint.

### 1. *The March 2018 meeting.*

King alleged that during the March 2018 meeting, Ms. Watson directed condescension, judgement, and minimization at him. ECF No. 1 at 4. King's supervisor and coworker each noticed this "disapproval" of plaintiff. *Id.* King asked his supervisor and coworker whether King said or did anything wrong or offensive, and each believed that King had not. *Id.* Later, King notified his Lieutenant about Watson's behavior. *Id.*

The City argues that these allegations do not show that King engaged in protected activity. The Court agrees. For starters, King did not allege that he told his supervisor and coworker that he took issue with Watson's behavior because it was animated by color bias. Instead, King merely alleged that he **asked** his supervisor and coworker whether they knew what was animating Watson's disapproval of King. King's question does not constitute oppositional activity.

Further, regarding King's report to his Lieutenant, even if this report constituted oppositional activity, King's allegations would still fall short of the third element. King's allegations must show that his Lieutenant knew King was opposing Watson's behavior because he believed it was an unlawful employment practice. In other words, King must allege that his

Lieutenant was aware that King opposed Watson's behavior because he believed it was animated by impermissible discrimination. However, King merely alleges that he told his Lieutenant about Ms. Watson's behavior. King later alleges that he "expressed concerns" about Watson's behavior to his Lieutenant, ECF No. 1 at 5, but he does not articulate what those concerns were. Thus, King does not allege that his Lieutenant knew that King was engaged in oppositional activity. Therefore, these allegations do not meet the third element of King's retaliation claim.

### 2. *The May 2018 conversation with Deputy Chief Denning.*

King alleges that after a meeting in May 2018, Deputy Chief Michael Denning asked King whether he had a problem with Watson. *Id.* at 5. Denning said that he "did not know why" Watson felt there was a problem between them. *Id.* In response, King asked Denning how to "fix" the discord between him and Watson, but Denning offered no guidance and appeared "genuinely confused" and "concerned." *Id.*

The City argues—and the Court agrees—that these allegations likewise fail to meet the first element of King's claim. Based on these allegations, Denning was confused about the discord between King and Watson. King does not allege that he told Denning that King took issue with Watson's behavior because it derived from discrimination. Rather, King merely alleges that he sought Denning's advice about how to "fix" Ms. Watson's perception of King.

To the extent that King's request for advice from Denning could constitute oppositional activity, the allegations would still not meet the third element. Again, King's allegations must show that Denning knew that King's request for advice on how to "fix" things was born of King's reasonable belief that Watson engaged in unlawful discrimination. However, that is not what King alleges. Therefore, these allegations do not state a claim upon which relief can be granted.

### 3. *Deputy Chief Burns' alleged criticism of King's work product.*

King alleges that in July 2018 he learned that then-Captain David Burns was telling department supervisors that King "fixes things" and "whitewashes" cases for officers during force investigations. ECF No. 1 at 5. King felt that Burns was impugning his reputation as an officer. *Id.* King allegedly told his Lieutenant about Burns's comment and threatened to file a hostile work environment complaint "if these actions continued by Burns." *Id.*

The Court finds that these allegations are insufficient to establish a retaliation claim. The City argues that a threat to file a complaint cannot constitute oppositional activity, but it cites no authority for that proposition. But even if the City established this assertion, King's claim would still fail on the third element.

King alleges that it was Denning who effected his reassignment. *Id.* at 8 ("Despite the comments made by Denning when removing [King] from his assignment . . ."). But King does not allege that Denning knew of his threat to file a hostile work environment complaint.

King certainly alleges that his threat to file a complaint should have triggered an obligation on his Lieutenant "to notify his chain of command." *Id.* at 5. But King never alleges that this actually occurred. Instead, King claims that if Denning did not know of King's threat, then he was "in violation of city policy." *Id.* at 11. But that allegation is not enough to infer that Denning knew of King's threat to file the hostile work environment complaint. *Id.* at 8. Further, King's allegations evince that he was incredulous when the City told him that his internal complaint could not proceed for failure to notify Denning of his threat. *See id.* at 11 ("In order to prevail in the grievance, Plaintiff would have had to confront the very people that slandered his name . . . [and have] them verify that they knew of his threat to file a hostile work environment complaint."). Furthermore, King claims that the City denied his hostile work environment complaint because he was unable to establish that Denning knew of the threat. *Id.* at 11–12.

Accordingly, even if the conditional threat constituted oppositional activity, the third element would not be met because it is not reasonable to infer that Denning was cognizant of that activity when he reassigned King to a different position. Without this knowledge, the supposed oppositional activity could not have been the but-for cause of King's reassignment. *See Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).

### 4. *King's reassignment and October 2018 complaint to HR.*

King claims that in September 2018 he attended a meeting where he and Denning had a "cordial but firm conversation" in front of several other employees. ECF No. 1 at 6–7. Following that meeting, Denning reassigned King to a different position that altered his working conditions, schedule, and pay. *Id.* at 8. King claims that under the collective bargaining

agreement between the City and its police officers, King was supposed to receive a 120-day notice of the transfer. *Id.* However, according to King, "the command" violated this term because it did not give King the requisite notice and instead gave him 120 days of special duty pay. *Id.* King filed a hostile work environment complaint with HR in October 2018. *Id.* at 9.

These allegations also fail to meet the third element of King's retaliation claim because to the extent that the "cordial but firm conversation" constitutes oppositional activity, the Court finds that it is insufficient to show but-for causation. The allegations do not show that Denning was aware that King's supposed opposition was based on his belief that King had suffered color or race discrimination. Therefore, the supposed oppositional activity could not have been the but-for cause of Denning reassigning King to a different position.

Further, to the extent that the City's alleged violation of the collective bargaining agreement is an adverse employment action, King alleges that this action was taken by "the command." The Court is unable to determine who comprises "the command" and, more importantly, whether those persons were aware of any oppositional activity. Thus, the Court is unable to determine whether the allegations show but-for causation.

Finally, King was reassigned from his position **before** he filed his October 2018 complaint with HR. It is axiomatic, then, that King's October 2018 complaint could not have been the but-for cause of any adverse employment action that preceded that complaint, including King's reassignment. King does not point to—and the Court cannot discern—any adverse employment action following the October 2018 complaint.

\* \* \* \* \*

In sum, the City has established that King failed to state a claim upon which relief may be granted under Title VII's anti-retaliation provision. However, the Court is not yet convinced that further amendment would be futile. Therefore, the Court will recommend to the district judge that King's second claim be dismissed without prejudice and with leave to amend.

**IV.   King's motion to amend.**

A litigant can amend her complaint with the Court's leave. Fed. R. Civ. P. 15(a)(2). Rule 15 declares that the Court should "freely give leave when justice so requires," *id.*, and the

Supreme Court has made clear that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court need not grant leave to amend, however, if a complaint, as amended, is subject to dismissal. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

Here, King primarily seeks two amendments to his complaint. First, he seeks to expand paragraph 54 of his complaint to remedy any perceived deficiency in his retaliation claim. Second, King seeks to add a fourth claim for violation of 42 U.S.C. § 1981.

The Court finds that King's first proposed amendment is futile. King's amendment to paragraph 54 is as follows:

> Defendants violated 42 U.S.C. § 2000e-3(a) by unlawfully retaliating against Plaintiff in response to (a) Plaintiff expressing his objection to, and opposition to, the discriminatory treatment and harassment to which he was being subjected because he is black/African-American, of light skin tone and mixed race heritage, and, subsequently, (b) Plaintiff advising his supervisor that he would be filing a hostile work environment complaint because of the pattern of unlawful discrimination against him due to the fact that he is black/African American, of light skin tone and mixed race heritage, as set forth in paragraph 14, supra. This pattern of retaliation took the form of harassment and bullying of Plaintiff, a failure to follow proper procedures when undertaking adverse action against Plaintiff, and a demotion in job duties and responsibilities undertaken for the purpose of embarrassing and humiliating Plaintiff, and continued after Plaintiff eventually filed his hostile work environment complaint, as set forth in paragraph 35.

ECF No. 17 at 10. However, this proposed amendment does not remedy the deficiencies raised by King's **factual** allegations. Without factual allegations, the expanded paragraph offers mere labels and conclusion, which are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If King is going to remedy the deficiencies identified by this Court, he will have to "plead true facts to *show* and *describe*" the retaliation he experienced. *Cellemme v. Sessions*, No. 2:16-cv-022539-JAD-CWH, 2017 WL 3749577, at *2 (D. Nev. Aug. 29, 2017).

For example, the Court found that although King "expressed concerns" about Watson's behavior, this allegation was insufficient to constitute oppositional activity because King did not articulate what those concerns were. The expanded paragraph leaves that deficiency intact.

Turning to King's second proposed amendment, § 1981 provides all persons in the United States "the same right . . . to make and enforce contracts." 42 U.S.C. § 1981(a). Its protections

extend to the enforcement of contracts that set forth the terms, conditions, benefits, and privileges of employment. *See Surrell v. Cal Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

The City argues that § 1981 precludes respondeat superior liability and that to establish municipal liability King must allege a policy or custom that led to a § 1981 violation. King did not respond to this argument.

The Court agrees with the City. In *Federation of African American Contractors v. City of Oakland*, the Ninth Circuit made clear that the similarities in language between §§ 1983 and 1981 meant that Congress imported into § 1981 "the traditional 'policy or custom' requirement set forth in *Monell*." 96 F.3d 1204, 1215 (9th Cir. 1996). Thus, when, as here, a plaintiff brings a § 1981 claim against a municipality, the plaintiff must allege that the § 1981 violation occurred because of "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). King has not done so. Therefore, his proposed amendment would be futile and the Court will recommend to the district judge that his motion to amend be denied.

**V.    Conclusion.**

IT IS THEREFORE RECOMMENDED that the defendant's motion to dismiss (ECF No. 9) be GRANTED in part and DENIED in part.

IT IS FURTHER RECOMMENDED that plaintiff's first claim survive.

IT IS FURTHER RECOMMENDED that plaintiff's second claim be dismissed without prejudice and with leave to amend.

IT IS FURTHER RECOMMENDED that plaintiff's third claim survive.

IT IS FURTHER RECOMMENDED that King's motion to amend (ECF No. 18) be denied without prejudice.

DATED: July 2, 2020.

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

…

**NOTICE**

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).