UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Daniel S. King,<br><br>  Plaintiff<br><br>v.<br><br>City of Henderson, Nevada,<br><br>  Defendant | Case No.: 2:19-cv-01129-JAD-BNW<br><br>**Order Granting Motion<br>for Summary Judgment and<br>Denying Countermotion to Strike**<br><br>[ECF Nos. 45, 52] |

  Henderson Police Department officer Daniel S. King sues the City of Henderson, Nevada for discriminating against him on the basis of his skin color then retaliating against him when he complained about it. The city moves for summary judgment on all of King's claims because King filed his discrimination charge too late; King cannot show that any adverse employment action taken by the city was because of his skin color; and King's alleged retaliatory demotion was a result of his insubordination, not in response to his complaints about color discrimination. King countermoves to strike most of the exhibits attached to the city's motion for various evidentiary reasons. I find that King's color-discrimination claim is time-barred, but even if it weren't, he has failed to establish critical elements of his claims. And because his demotion took place prior to his complaints about his work environment, it could not have been in retaliation for those complaints. I further find King's objections to the city's documentary evidence meritless. So I grant the city's motion, deny King's countermotion, and close this case.

**Discussion**

**I.     King's countermotion to strike [ECF No. 51]**

In his countermotion, King seeks to strike 26 of the exhibits the city attached to its summary-judgment motion for several evidentiary reasons.[1] I deny his motion, in part because some of the challenged exhibits play no role in my resolution of the city's motion, making his challenges to them moot,[2] and in part because the remainder of his objections are without merit. Only two of the challenged exhibits are relevant: (1) paragraph 30 of the deputy chief's declaration (city's exhibit 6) and (2) the report of the external investigation into King's allegations of color discrimination (city's exhibit 52).[3]

King's challenge to the declaration is based on the rule against hearsay. But in that paragraph, the deputy chief does not attempt to reference a prior statement; rather, he says that he was never told about a complaint King made to another officer—it refers to no out-of-court statement.[4] So it is not a "statement" under the Federal Rules of Evidence (FRE),[5] and thus it's not hearsay. King's challenge to the external-investigation report is similarly flawed. He argues that the report is both unauthenticated and hearsay evidence. But the report was authenticated by the city's human-resources partner who conducted the investigation and is admissible under the business-record exception to the rule against hearsay because it was based on a contemporaneous investigation, compiled by an organization that conducted such investigations regularly, and

---

[1] ECF No. 52.

[2] The city's exhibits 5, 8, 9, 18, 19, 21, 22, 23, 24, 25, 26, 31, 14, 15, 37, 39, 40, 41, 44, 47, 53, 54, 55, and 56 did not play a role in my decision to grant the city summary judgment, so I deny as moot the motion to strike these exhibits.

[3] ECF No. 45-7 at 6–12; ECF No. 45-13 at 12–16.

[4] ECF No. 45-7 at ¶ 30.

[5] Fed. R. Evid. 801(a).

shows no hallmarks of untrustworthiness.[6]  Indeed, many of the facts recounted in the report are corroborated by King's own deposition and filings.  I therefore deny King's countermotion to strike in its entirety.

## II.     The city's motion for summary judgment [ECF No. 45]

### A.     Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[7]  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[8]  A fact is material if it could affect the outcome of the case.[9]

On summary judgment, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[10]  So the parties' burdens on an issue at trial are critical.  When the party moving for summary judgment would bear the burden of proof, "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[11]  If it does, the burden shifts to the nonmoving party, who "must

---

[6] ECF No. 45-7 at ¶ 16; *see* Fed. R. Evid. 803(6).  King also appears to challenge the paragraph authenticating the external-investigation report as hearsay and for lack of personal knowledge.  But as with the deputy chief's declaration, the authentication paragraph references no out-of-court statements and describes the declarant's personal receipt of the report.

[7] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[9] *Id.* at 249.

[10] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[11] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

present significant probative evidence tending to support its claim or defense."[12]  But when the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[13]  The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[14]

### B. King cannot establish a color-discrimination claim under federal or state law.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual[] or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . color . . ." or "to limit, segregate, or classify [its] employees . . . in any way [that] would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of" his color.[15]  To make out a prima facie claim for color discrimination, King must establish that (1) he is a member of a protected class (2) who was qualified for his position (3) but was subject to an adverse employment action (4) for a discriminatory reason or to which similarly situated individuals outside his protected class weren't subjected.[16]  If he does so, the burden shifts to the city to show that they had legitimate,

---

[12] *Id.*
[13] *Celotex*, 477 U.S. at 323.
[14] *Id.* at 322.
[15] 42 U.S.C. § 2000e-2(a).
[16] *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123–24 (9th Cir. 2000).

4

non-discriminatory reasons for the adverse employment action.[17]  King may still prevail on his claim if he can show that the city's proffered reasons are pretextual.[18]

      King's primary allegation of color discrimination arises out of a March 12, 2018, meeting with the newly hired and reform-minded Henderson Police Department (HPD) police chief and her deputy chiefs, during which King showed them two videos on his phone and a printout of a public-relations PowerPoint created by a Tulsa attorney who handles police-use-of-force cases.[19] According to King, the chief never mentioned his skin color but responded by saying (1) "Where did you get this, off the internet?"; and (2) "So you just got this from a friend[,] right?"[20] Months after that meeting, King was reportedly told by various individuals within HPD to watch his back, that he didn't "know [his] place," and that the chief was asking about him; he was also accused of "fix[ing]" and "whitewash[ing]" use-of-force investigations into his fellow officers.[21] After his disdain for the new chief's administration became widely apparent, King was removed from his post as a trainer and specialist on use of force.[22]

      None of these instances amounts to color discrimination under federal law.  First, any aspect of King's claim based on his one meeting with the new HPD chief is time-barred.  To file a civil suit for employment discrimination under federal and state law, a plaintiff must first timely file an employment-discrimination charge with the federal Equal Employment

---

[17] *Id.*
[18] *Id.*
[19] ECF No. 45-5 (King deposition, part 1) at 45–46.
[20] *Id.* at 46–47.
[21] *Id.* at 54; ECF No. 45-6 (King deposition, part 2) at 17, 26–27.
[22] ECF No. 45-6 at 27.

5

Opportunity Commission (EEOC) or equivalent state agency.[23] The Supreme Court has instructed that the charge-filing deadline demands "strict adherence."[24] In Nevada, that deadline is 300 days after the allegedly unlawful employment practice.[25] And it is undisputed that King's EEOC charge was filed more than 300 days after that incident.[26] So King's action, to the extent it relies on that incident with the police chief, is untimely and fails for that reason alone.

Next, any claims based on allegedly discriminatory offhand comments by HPD officials cannot rise to the level of employment discrimination because they aren't associated with any adverse employment actions, a required element of any discrimination claim.[27] The only adverse employment action King describes is his removal from his position in the training unit. But that action isn't a result of employment discrimination because there is no evidence that it was taken because of King's skin color—indeed, King doesn't offer any such evidence. Even if he could, the city has provided numerous legitimate and non-discriminatory reasons for his removal: King publicly and vocally expressed resistance to the new chief's use-of-force reform efforts;

---

[23] *Lewis v. City of Chicago*, 560 U.S. 205, 210 (2010); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002); *see Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005). Because the federal-law and state-law employment-discrimination statutes are materially similar, I primarily discuss the federal law (Title VII) in this section, but my analysis applies with equal force to King's state-law claim. *See Pope*, 114 P.3d at 280.

[24] *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980); *see* 42 U.S.C. § 2000e-5(e)(1); Nev. Rev. Stat. § 233.160(1)(b).

[25] *See* 42 U.S.C. § 2000e-5(e)(1); Nev. Rev. Stat. § 233.160(1)(b).

[26] ECF No. 45-12 at 48; ECF No. 45-13 at 2.

[27] *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) ("Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion."); *cf. Lewis v. United Parcel Serv., Inc.*, 252 F. App'x 806, 808 (9th Cir. 2007) (unpublished) (noting that, under a materially similar California anti-discrimination statute, even derogatory comments aren't adverse employment actions).

mishandled a use-of-force investigation into a friend who'd drunkenly slammed a civilian into the ground while off-duty; openly declared—in front of HPD officers and civilians alike—that the decision to discipline that friend was wrong, undermining the chain of command; and refused to commit to training officers under HPD's use-of-force policies with which he disagreed.[28] King counters that these reasons are pretextual because if the demotion was disciplinary in nature, the city would have violated its own policies and its collective-bargaining agreement with the police union, and that a violation of internal policies should give rise to an inference of pretext.[29] But the undisputed evidence shows that HPD policies make special assignments to the training unit entirely discretionary and not governed by the usual transfer and discipline procedures in the collective-bargaining agreement.[30] Because King thus cannot state a color-discrimination claim, I grant the city summary judgment.

### C. King's retaliatory demotion claim also fails.

To establish a prima facie case of retaliation, King must show that (1) he engaged in a protected activity and (2) the city took an adverse employment action against him (3) because of that protected activity.[31] A complaint based on an employee's "reasonable belief that the employer has engaged in an unlawful employment practice" under Title VII constitutes protected activity.[32] As to the third element, the employer must be aware of the protected activity[33] and its "desire to retaliate" must be the "but-for cause of the challenged employment action"; but

---

[28] ECF No. 45-5 at 55–56; ECF No. 45-6 at 11, 23, 25–28, 34–36.

[29] ECF No. 51 at 18–19 (citing an unpublished extrajurisdictional district-court case).

[30] ECF No. 45-2 at 3, 15, 20; *see generally* ECF No 45-3.

[31] *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006).

[32] *Freitag v. Ayers*, 468 F.3d 528, 541–42 (9th Cir. 2006), *cert. denied*, 549 U.S. 1323 (2007); *cf. Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009).

[33] *Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).

"causation . . . may be inferred from the proximity in time between the protected action and the allegedly retaliatory employment decision."[34] If the employee establishes a prima facie case, the burden shifts to the city to show nonretaliatory reasons for demoting him.[35] King can still prevail if he proves those reasons were pretextual.[36]

King claims that his removal from the training unit at the behest of a deputy chief was retaliatory because he complained about a hostile work environment. But his only hostile-work-environment complaint prior to his demotion was unrelated to color discrimination and made to a peer,[37] and there is no evidence that the deputy chief was aware that King had made that complaint.[38] And as with his discrimination claim, the city has presented numerous legitimate and non-retaliatory reasons for King's removal. He has made no effort to show that those reasons were pretextual; he instead bases his argument on the fact that there is "no evidence" that the chief "den[ies]" retaliating against him, which inappropriately shifts the burden onto the city to disprove his allegations.[39] I find that King can't establish the required elements of a retaliation claim, so I grant the city summary judgment on that claim, leaving none.

---

[34] *Cornwell*, 439 F.3d at 1035 (cleaned up).

[35] *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

[36] *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

[37] ECF No. 45-13 at 4–8.

[38] ECF No. 45-7 at ¶ 30.

[39] ECF No. 51 at 15, 28.

**Conclusion**

IT IS THEREFORE ORDERED that defendant City of Henderson, Nevada's motion for summary judgment **[ECF No. 45] is GRANTED**.  The Clerk of the Court is directed to **ENTER SUMMARY JUDGMENT** for the city and against plaintiff Daniel S. King on all claims and **CLOSE THIS CASE**.

IT IS FURTHER ORDERED that King's countermotion to strike **[ECF No. 51] is DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
March 8, 2022